

FILED
CLERK, U.S. DISTRICT COURT

NOV 1 4 2018

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMIEL A. KANDI, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN LANGFORD, et al., <br><br> Defendants. | Case No. CV 17-3617 FMO(JC) <br><br> ORDER (1) DISMISSING SECOND AMENDED COMPLAINT AND ACTION; AND (2) DENYING MOTION TO DISMISS AS MOOT <br><br> [DOCKET NO. 69] |

## I.  BACKGROUND AND SUMMARY

On June 4, 2018, plaintiff Emiel A. Kandi – who is in federal custody at the Federal Prison Camp in Yankton, South Dakota, is proceeding *pro se*, and has paid the filing fee – filed the operative Second Amended Complaint (also referred to as "SAC"), asserting claims under the Migratory Bird Treaty Act of 1916, 16 U.S.C. §§ 701, *et seq.* ("MBTA") and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics ("Bivens"), 403 U.S. 388 (1971) (predicated on First Amendment retaliation and/or a violation of state law), against multiple defendants associated with the Federal Correctional Institution in Lompoc, California ("FCI Lompoc"), where plaintiff was previously housed, namely:  Warden Steven Langford, Correctional Officer Rosales, Unit Manager Scott Webster, the United

States Bureau of Prisons ("BOP"), and multiple unnamed individuals identified only as "Doe(s) 1-10" ("Doe Defendants") (collectively "defendants").[1] (SAC at 1-3). Plaintiff appears to sue the individual defendants in both their individual and official capacities, and to seek injunctive and monetary relief from all defendants. (SAC at 1-3, 17-18).[2]

Liberally construed, the Second Amended Complaint essentially alleges that "BOP staff" violated the MBTA by using high-pressure fire hoses to destroy migratory Capistrano swallows "a/k/a mud swallows" and their eggs ("swallows"), and swallow nesting areas ("swallow nests") at FCI Lompoc during their natural breeding season, and did so without first obtaining the proper permits from the United States Department of the Interior. (SAC at 1-2, at 9 ¶ 6, at 10 ¶ 1, at 11 ¶ 11). The Second Amended Complaint also alleges that defendant Webster, and

---

[1] Plaintiff concurrently filed over 90 pages of affidavits and exhibits (which this Court refers to using the Docket and Page ID numbers from the Court's Case Management/Electronic Case Filing System [CM/ECF]) which included affidavits from plaintiff (collectively "Plaintiff's Affidavits") dated (i) May 27, 2018 (Doc. No. 68-1 at 578-80) ("Kandi Aff. #1"); (ii) May 8, 2017, and originally filed on May 12, 2017 (Doc. No 68-1 at 581-84; see also Doc. No. 4 at 33-36) ("Kandi Aff. #2"), together with attached exhibits (Doc. No 68-1 at 586-93) ("Kandi Aff. #2, Ex. A"); (iii) October 23, 2017, and originally filed on October 27, 2017 (Doc. No 68-1 at 601-04; see also Doc. No. 35-1 at 301-04) ("Kandi Aff. #3"); (iv) January 14, 2018, and originally filed on January 18, 2018 (Doc. No 68-1 at 622-23; see also Doc. No. 59 at 493-94) ("Kandi Aff. #4"); and (v) August 29, 2017, and originally filed on October 4, 2017 (Doc. No 68-1 at 631-39; see also Doc. No. 32 at 208-16) ("Kandi Aff. #5") together with attached exhibits (Doc. No 68-1 at 640-57) ("Kandi Aff. #5, Ex. A"); as well as affidavits originally filed on May 12, 2017, from several other FCI Lompoc inmates, specifically (vi) Jason Clark, dated May 1, 2017 (Doc. No 68-1 at 587-88; see also Doc. No. 5 at 40-41) ("Clark Aff."); (vii) Matthew Gillum, dated May 6, 2017 (Doc. No 68-1 at 594-95; see also Doc. No. 8) ("Gillum Aff."); (viii) Michael Riconosciutto, dated May 8, 2017 (Doc. No 68-1 at 596-97; see also Doc. No. 9) ("Riconosciutto Aff."); and (ix) Jonathan Glen, dated May 8, 2017 (Doc. No 68-1 at 598-99; see also Doc. No. 7) ("Glen Aff.").

[2] On May 12, 2017 and October 27, 2017, plaintiff filed his original and First Amended Complaints, both of which asserted MBTA and other claims against some or all of the same defendants, and the latter of which asserted a Bivens claim predicated on first amendment retaliation. On May 17, 2018, this Court dismissed the first amended complaint for failure to state a claim with leave to amend. (Docket No. 67).

possibly others, retaliated against plaintiff in violation of the First Amendment and California law (specifically "The Bane Act," Cal. Civ. Code § 52.1(b)) by issuing false disciplinary charges against plaintiff in retaliation for plaintiff's filing of inmate grievances and civil rights litigation. (SAC at 1-2, 9, 13-17).

On June 20, 2018, defendants filed a Motion to Dismiss the Second Amended Complaint ("Motion to Dismiss" or "MTD"). On July 5, 2018, plaintiff filed a Response and Objections to the Motion to Dismiss ("Opp."). On July 18, 2018, defendants filed a Reply.

Based upon the record and the applicable law, and for the reasons discussed below, the Court *sua sponte* screens the Second Amended Complaint, dismisses the Second Amended Complaint without further leave to amend, dismisses this action, denies the Motion to Dismiss as moot, and directs that Judgment be entered accordingly.

## II.    THE SECOND AMENDED COMPLAINT

Very liberally construed together with Plaintiff's Affidavits, the Second Amended Complaint alleges, in pertinent part, the following:

### A.    Allegations Related to MBTA Claim

Migratory Capistrano swallows are a protected species under the MBTA. (SAC at 8 ¶ 1, 10 ¶ 1).

BOP "staff" at FCI Lompoc "washed away and killed active nesting Capistrano Swallows" without first obtaining "the proper permits" from the United States Department of the Interior ("DOI"). (SAC at 1-2, at 9 ¶ 6, at 10 ¶ 1, at 11 ¶ 11). The foregoing "occurred during the 2017 breeding season and, most likely, will continue again each year unless permanently enjoined from doing so." (SAC at  9, ¶ 6; SAC at 10, ¶ 1).

Plaintiff personally "witnessed the destruction of completed swallow nesting colonies at the hands of BOP staff." (SAC at 8-9, ¶ 3; SAC at 10, ¶ 5; Kandi Aff. #2 at 1). Other inmates also witnessed an inmate "Bird Shower Crew" use high-

pressure fire hoses to destroy swallows and their nesting areas during their natural breeding season. (SAC at 8-9, ¶ 3; SAC at 10, ¶ 5; Clark Aff. at 1-2 [noting incident on May 1, 2017, when inmates used fire hoses to destroy "nest building swallows" and "wholly constructed nests"]; Gillum Aff. at 1-2 [during "six weeks" prior to May 6, 2017, inmate witnessed "five times" when inmate "Bird Shower Crew" destroyed swallow nests and swallows]; Riconosciutto Aff. at 1-2 [noting incident on May 5, 2017, when "Bird Shower Crew" destroyed "four (4) occupied and completed cliff swallow nests"]; Glen Aff. at 1-2 [noting incident within "last two weeks of [May 8, 2017]" when FCI Lompoc staff directed inmates to destroy "mud swallow nesting colonies" with high-pressure fire hoses]).

The BOP's actions were "directly at odds" with plaintiff's religious beliefs (*i.e.*, the "Asatru faith"), and caused "procedural injury" to plaintiff because they "had a negative effect on the plaintiff's 'aesthetic, conservational, and recreational' religious beliefs, and constituted a 'concrete interest' which sufficiently 'adversely affected or aggrieved'" plaintiff. (SAC at 1-2; SAC at 9, ¶¶ 5, 10; SAC at 10, ¶ 5; SAC at 11, ¶ 11; Kandi Aff. #2 at 2-3).

## B.   Allegations Related to Bivens Claim

Plaintiff is a "practicing member of the Nordic Asatru faith," and plaintiff can "read and write in a runic alphabet." (Kandi Aff. #5 at 2, ¶ 6). The BOP "is aware of [plaintiff's] confessed religious faith" since plaintiff is "listed as 'Asatru/Pagan' in the Sentry inmate classification system." (Kandi Aff. #5 at 2, ¶ 6). Plaintiff has not previously had any "disciplinary actions" filed against him at FCI Lompoc. (Kandi Aff. #5 at 2, ¶ 5).

On or about November 5, 2016, plaintiff filed an inmate grievance which complained about defendant Webster's "new policy" prohibiting inmates from storing any legal materials under their bunk ("November Grievance"). (SAC at 13, ¶ 22; Kandi Aff. #5 at 2, ¶ 4; Kandi Aff. #5, Ex. A at 8-13). Plaintiff also "[has] three, and soon to be four, active lawsuits against [FCI Lompoc] and members of

4

its staff" (collectively "Plaintiff's Lawsuits"). (Kandi Aff. #5 at 2-3, ¶¶ 3, 7). Defendant Webster "was aware of the Plaintiff's M.B.T.A. lawsuit and was aware that Plaintiff was assisting other inmates with their legal needs." (SAC at 13, ¶ 23).

On August 24, 2017, defendant Webster confiscated one of plaintiff's books during a search of plaintiff's "bunkie's" area. (Kandi Aff. #5 at 3, ¶¶ 9-10, 14-15). On August 25, 2017, plaintiff retrieved his book from the bunkie's locker after it was returned from the Unit Officer's office. (Kandi Aff. #5 at 4, ¶ 16). Later that day defendant Webster came to plaintiff's bunk, asked about plaintiff's book "with the paper in it," and confiscated the book, stating that it "should have been inventoried with [the] bunkie's property[,]" and that he had to check if plaintiff "[could] even have [the] particular book." (Kandi Aff. #5 at 4, ¶ 17). Plaintiff informed defendant Webster that the book "was a religious philosophy book [which] had been obtained lawfully" but the defendant did not want to discuss the issue any further. (Kandi Aff. #5 at 4, ¶ 17). The FCI Lompoc Education Department and Chapel makes many books available to inmates which include "alternate forms of writing" like plaintiff's book, yet defendant Webster "selected" only plaintiff's book to be confiscated. (Kandi Aff. #5 at 6-7, ¶¶ 33-34).

On August 28, 2017, plaintiff was "summoned to the Lieutenant's Office" and issued a "disciplinary shot" (*i.e.*, a BOP "Incident Report") which charged plaintiff with violating several disciplinary rules, specifically "Prohibited Act Code[]" Section 296 ("[u]se of the mail for abuses other than criminal activity"), Section 299 ("[c]onduct that disrupts or interferes with the security or orderly running of the institution"), and Section 305 ("[p]ossession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels"). (Kandi Aff. #5 at 4, ¶18).

The Incident Report signed by defendant Webster on August 28, 2017, noted that "[s]taff became aware of [the] incident" on August 28, 2017, [at] 5:00 p.m.[,]" and described the incident as follows:

On 8/28/2017 at approximately 5:00 p.m. I was reviewing a book titled, "the Secret Teachings of all Ages", that I had previously found in the possession of [plaintiff]. . ., and found a hand written paper in it. When I removed the book from [plaintiff] he had pointed out that there was a paper located in the book that he wanted. I had stated to him that we will leave everything in the book for a review since I was concerned about the book. The paper was the one that [plaintiff] had previously pointed out. The paper has codes written on it. Also noted was that the paper was placed in a chapter XXXIX (39) of the book labeled, "The Cryptogram as a Factor in Symbolic Philosophy." The chapter in the book is written about various ciphers, codes and cryptograms. The chapter includes various pictures and illustrations of these items. On the inside cover of the book [plaintiff] has written his name and register number. [Plaintiff] claimed ownership of the written paper located in the book and book. Books on ciphers, codes or cryptograms are not authorized. Writing in ciphers, codes or cryptograms is not authorized.

(Kandi Aff. #5, Ex. A at 4; see Kandi Aff. #5 at 4-5, ¶ 20).

The Incident Report "was NOT signed in Section 14" (*i.e.*, "Incident Report Delivered to Above Inmate by"), "was NOT dated in Section 15" (*i.e.*, "Date Incident Report Delivered"), and "was NOT time-logged in Section 16" (*i.e.*, "Time Incident Report Delivered"). (Kandi Aff. #5 at 4, ¶ 19; Kandi Aff. #5, Ex. A at 4) (emphasis in original). In addition, BOP rules state that "[s]anctions will not be imposed in a capricious or retaliatory manner[,]" and that inmates "will ordinarily receive an incident report within 24 hours of staff becoming aware of [an inmate's] involvement in the incident." (SAC at 13, ¶ 20; Kandi Aff. #5 at 5, ¶ 23 (quoting BOP Program Statement 5270.09)). Thus, plaintiff asserts that the Incident Report was "invalid" because it "was issued four days late[.]" (Kandi Aff. #5 at 5, ¶ 23).

On or about October 11, 2017, the Incident Report against plaintiff was "expunged" after a disciplinary hearing officer found "insufficient evidence to support the charge[s]" against plaintiff. (Kandi Aff. #1 at 2; Kandi Aff. #5, Ex. A at 7).[3]

Plaintiff attests "[i]t is [his] sincere belief that [defendant] Webster's actions are in retaliation for [plaintiff's] use of the Administrative Remedy process, for [his] filing of lawsuits against the Lompoc FCI institution and staff, and for helping other inmates with their legal needs." (Kandi Aff. #5 at 9, ¶ 39).

## III.    LEGAL STANDARDS GOVERNING SCREENING

As plaintiff is a prisoner proceeding on a civil rights complaint against governmental defendants, the Court is obligated screen the Second Amended Complaint, and is required to dismiss the action at any time it concludes the complaint is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c); Byrd v. Phoenix Police Department, 885 F.3d 639, 641 (9th Cir. 2018) (citations omitted). The Court must apply the same standard for screening the Second Amended Complaint as it does for evaluating motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted).

Dismissal pursuant to Rule 12(b)(6) is proper only when a complaint fails to assert a claim under a cognizable legal theory and/or fails to allege sufficient facts to support such a claim. See Taylor v. Yee, 780 F.3d 928, 935 (9th Cir. 2015) (citation and quotation marks omitted), cert. denied, 136 S. Ct. 929 (2016). Courts evaluate the sufficiency of a complaint under the pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure ("Rule 8"). See Zixiang Li v. Kerry,

---

[3]This Court refers to the unnumbered pages between pages 6 and 8 in the Kandi Aff. #5, Ex. A collectively as Kandi Aff. #5, Ex. A at 7.

710 F.3d 995, 998-99 (9th Cir. 2013) (citation omitted).  Under Rule 8, each complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular claim being asserted *and* "the grounds upon which [that claim] rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing id. at 555).

To avoid dismissal, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Byrd, 885 F.3d at 642 (citations omitted); see also Johnson v. City of Shelby, Mississippi, 135 S. Ct. 346, 347 (2014) (per curiam) (Twombly and Iqbal instruct that plaintiff "must plead facts sufficient to show that [plaintiff's] claim has substantive plausibility").  A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. Iqbal, 556 U.S. at 678 (citation omitted); see also Keates v. Koile, 883 F.3d 1228, 1242 (9th Cir. 2018) ("[A] [Section 1983] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (quoting id. at 676); Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint "must allege the basis of [plaintiff's] claim against *each* defendant" to satisfy Rule 8 pleading requirements) (emphasis added); Chappell v. Newbarth, 2009 WL 1211372, *3 (E.D. Cal. May 1, 2009) ("[A] complaint must put each defendant on notice of Plaintiff's claims against him or her, and their factual basis.") (citing Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004)).  Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere

possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678-79 (citations and quotation marks omitted).

Courts generally may consider only the contents of a complaint when evaluating the sufficiency of a complaint. United States v. Corinthian Colleges, 655 F.3d 984, 998-99 (9th Cir. 2011) (citation omitted). However, in certain circumstances a court may also consider documents attached to the complaint (or upon which the complaint "necessarily relies"), as well as judicially noticed matters of public record. Id. at 999 (citations omitted); see also Tekle v. United States, 2002 WL 1988178 *3 (C.D. Cal. 2002) (taking judicial notice of prior complaint and exhibits) (citing Fed. R. Evid. 201(b)), aff'd, 58 Fed. Appx. 768 (9th Cir. 2003).

At the screening stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not. Id. (citation and quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'") (quoting id.), cert. denied, 135 S. Ct. 980 (2015); Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir.) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.") (citations and quotation marks omitted), cert. denied, 565 U.S. 1093 (2011). In addition, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted), and "need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (citation omitted).

In general, civil rights complaints are interpreted liberally in order to give *pro se* plaintiffs "the benefit of any doubt." Byrd, 885 F.3d at 642 (citations and internal quotation marks omitted). Nonetheless, a *pro se* plaintiff must still follow the rules of procedure that govern all litigants in federal court, including the Rule 8 requirement that a complaint minimally contain a short and plain statement of a plausible claim. See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.") (citation omitted), cert. denied, 516 U.S. 838 (1995).

If a *pro se* complaint is dismissed for failure to state a claim, the court must "freely" grant leave to amend if it is "at all possible" that the plaintiff could correct the pleading errors in the complaint by alleging "other facts." Cafasso v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc) (citation and quotation marks omitted). Nonetheless, courts have the discretion to deny leave to amend in cases of undue delay, bad faith, undue prejudice to the opposing party, "repeated failure to cure deficiencies by amendments previously allowed," and futility. See Foman v. Davis, 371 U.S. 178, 182 (1962); Cafasso, 637 F.3d at 1058 (citations omitted). Courts have "particularly broad" discretion where a plaintiff "has previously amended the complaint." Cafasso, 637 F.3d at 1058 (citation and quotation marks omitted); see also Griggs v. Pace American Group, Inc., 170 F.3d 877, 879 (9th Cir. 1999) ("trial court's discretion . . . is particularly broad where, as here, a plaintiff previously has been granted leave to amend."). A court may consider factual allegations outside of the complaint in determining whether to grant leave to amend. See Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

///

///

///

## IV. DISCUSSION

### A. The Second Amended Complaint Fails to State a Cognizable Claim Under the MBTA

#### 1. Pertinent Law

The MBTA is a federal criminal statute which generally makes it unlawful to actually or attempt to "pursue, hunt, take, capture [or] kill . . . any migratory bird, any part, nest, or egg of any such bird. . ." without first obtaining a permit from the United States Fish and Wildlife Service ("FWS"). Protect Our Communities Foundation v. Jewell, 825 F.3d 571, 585 (9th Cir. 2016) (citing 16 U.S.C. §§ 703(a), 706, 707(a)(d)). While the MBTA does not explicitly provide a private right of action for MBTA violations, certain individuals may still bring a civil suit pursuant to the Administrative Procedure Act ("APA") "to compel agency compliance with the MBTA." See id. at 585 (citing City of Sausalito v. O'Neill, 386 F.3d 1186, 1203 (9th Cir. 2004)).

The APA provides that any person "adversely affected or aggrieved by agency action within the meaning of a relevant statute" is entitled to judicial review so long as the substantive statute expressly provides for judicial review, or the challenged action constitutes a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. §§ 702, 704 ("Section 702" and "Section 704," respectively); Heckler v. Chaney, 470 U.S. 821, 828 (1985) (citing id.); Navajo Nation v. United States Forest Service, 535 F.3d 1058, 1090 (9th Cir. 2008) (en banc) (citations omitted), cert. denied, 556 U.S. 1281 (2009); see also Lujan v. National Wildlife Federation, 497 U.S. 871, 882 (1990) ("When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'") (citing 5 U.S.C. § 704); Wild Fish Conservancy v. Jewell, 730 F.3d 791, 800-01 (9th Cir. 2013) ("To maintain a cause of action under

///

11

the APA, a plaintiff must challenge 'agency action' that is 'final.'") (citing Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 61-62 (2004)).

"Agency action" under the APA includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 701(b)(2) (incorporating 5 U.S.C. § 551(13)); Norton, 542 U.S. at 62 (citations omitted); Wild Fish Conservancy, 730 F.3d at 800-01 (citing 5 U.S.C. § 551(13)). While the APA's statutory definition of agency action is "expansive," it is "not so all-encompassing as to authorize . . . judicial review over everything done by an administrative agency." Wild Fish Conservancy, 730 F.3d at 800-01 (citation omitted).

In general, agency actions are "final" for APA purposes only if "they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process." Ukiah Valley Medical Center v. Federal Trade Commission, 911 F.2d 261, 264 (9th Cir. 1990) (citations and internal quotation marks omitted); see generally Bennett v. Spear, 520 U.S. 154, 177-78 (1997) ("final" agency action must (1) "mark the 'consummation' of the agency's decisionmaking process" (i.e., not be "merely tentative" or "interlocutory"); and (2) be an action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'") (citations omitted).

A person is "adversely affected or aggrieved by agency action within the meaning of a relevant [substantive] statute" (e.g., MBTA) when he or she personally suffers an injury that "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for [the plaintiff's] complaint."[4] 5 U.S.C. § 702; National Wildlife Federation, 497 U.S. at

---

[4]The U.S. Supreme Court provided the following example:

[T]he failure of an agency to comply with a statutory provision requiring "on the record" hearings would assuredly have an adverse effect upon the company that

(continued...)

12

883 (citation omitted); San Luis & Delta-Mendota Water Authority v. United States, 672 F.3d 676, 704 (9th Cir. 2012) (citing id.); see also Sierra Club v. Morton, 405 U.S. 727, 734-35 (1972) (APA "'injury in fact' test" requires "injury to a cognizable interest" and proof that party seeking judicial review personally be "among the injured"). To determine whether a plaintiff is within the zone of interests of a statute allegedly violated, courts look "to the substantive provisions of the [statute], the alleged violations of which serve as the gravamen of the complaint." City of Sausalito, 386 F.3d at 1200 (quoting Bennett, 520 U.S. at 175). The zone of interest test "is not meant to be especially demanding." Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 225 (2012) (quoting Clarke v. Securities Industry Association, 479 U.S. 388, 399 (1987)). APA plaintiffs need only show that their interests fall within the "general policy" of those interests the underlying substantive statute intended to protect such that interpretations of the statute's provisions or scope could directly affect them. National Credit Union Administration v. First National Bank & Trust Co., 522 U.S. 479, 489 (1998) (citation omitted). However, a plaintiff is not entitled to judicial review pursuant to the APA where the interests at stake are only "marginally related to or inconsistent with the purposes implicit in the [substantive] statute. . . ." City of Sausalito, 386 F.3d at 1200 (citations and internal quotation marks omitted).

There is a "strong presumption" that the affirmative actions of an administrative agency are subject to judicial review. 5 U.S.C. § 701(a)(2); Heckler,

---

[4](...continued)
has the contract to record and transcribe the agency's proceedings; but since the provision was obviously enacted to protect the interests of the parties to the proceedings and not those of the reporters, that company would not be "adversely affected within the meaning" of the statute.

National Wildlife Federation, 497 U.S. at 883.

13

470 U.S. at 830-31; Pinnacle Armor, Inc. v. United States, 648 F.3d 708, 718 (9th Cir. 2011) (citations omitted). Nonetheless, the APA does not apply in certain narrow circumstances, such as when the substantive statute expressly precludes review, or the challenged agency action involves a function that has been completely "committed to agency discretion by law." See 5 U.S.C. § 701(a).

## 2. Analysis

Even with the most liberal construction, the non-conclusory allegations in plaintiff's Second Amended Complaint fail to state a viable MBTA claim.

First, the Second Amended Complaint does not plausibly allege that any defendant violated the MBTA – *i.e.*, actually did, or attempted to "pursue, hunt, take, capture [or] kill . . . any migratory bird, any part, nest, or egg of any such bird" without first obtaining any permit required by the FWS. For instance, plaintiff does not allege specific facts which support a reasonable inference that MBTA regulations required a permit at all under the circumstances, or if so, that plaintiff had personal knowledge of any factual basis for inferring that the requisite permits, in fact, had not been obtained. Conclusory allegations that "the [BOP] failed to first obtain the proper permits" (SAC at 1-2), "[t]he [BOP] did NOT have a permit from the [DOI] to legally kill or harass a protected species during its breeding season" (SAC at 9, ¶ 6), "[BOP] staff at Lompoc FCI have washed away and killed active nesting Capistrano Swallows during breeding season WITHOUT a permit to do so issued by the [FWS]" (SAC at 10, ¶ 1) (emphasis in original), and "[t]he BOP's actions in killing the protected species WITHOUT a permit is a [MBTA] violation" (SAC at 10, ¶ 2) (emphasis in original), do not plausibly support any such inference. Nor do plaintiff's repeated assertions in his Opposition that "THE DEFENDANTS ARE LYING!!!" (Opp. at 4) (emphasis in original).

Likewise, plaintiff's "Sworn Affidavits" incorporated into the Second Amended Complaint do not reflect any *specific* facts which plausibly show, as plaintiff contends, "the lack of a[] permit to destroy the protected swallows." (SAC

14

at 10, ¶ 5). To the contrary, plaintiff's submissions suggest that as recently as May 3, 2017 – *i.e.*, nine (9) days before the instant action was commenced in federal court – plaintiff personally had no factual basis at all for claiming that any required permit had not been obtained. (See, e.g., Kandi Aff. #2, Ex. A at 1, 4-7 [Freedom of Information Act request from plaintiff mailed to DOI on May 3, 2017, seeking "copies of all permits issued [in] 2017" to BOP's FCI Lompoc facility "for the removal of [MBTA] covered species, specifically swallows, including any attachments which detail the removal procedures allowed"]; Kandi Aff. #3 at 2 [noting defendant Langford's June 16, 2017, response to plaintiff's inmate grievance about alleged MBTA violations which stated "We understand our obligations under the [MBTA] and we are complying with the [FWS] guidance in addressing swallows nesting" and observing that the response "never addresse[d] the issue of permitting as required by the MBTA and the [DOI]").

Second, the Second Amended Complaint also does not identify any distinct "agency action" within the meaning of Section 702, much less one that was "final" within the meaning of Section 704 that could plausibly support an APA action for violation of MBTA. For example, as previously explained to plaintiff, the challenged conduct – BOP officials' alleged destruction of swallows and swallow nests "during breeding season" without a permit – does not appear fairly to fit within the APA's narrow definition of a discrete "agency action" that might be reviewable – *i.e.*, an agency "rule, order, license, sanction, relief" or the equivalent. 5 U.S.C. § 551(13); cf., e.g., Wild Fish Conservancy, 730 F.3d at 801 (allegations that DOI violated federal law while operating dams by closing certain waterway gates in a manner that improperly harmed native fish populations "not fairly analogous to a 'rule, order, license, sanction, [or] relief'" under APA agency action) (citing 5 U.S.C. § 551(13)); Montana Wilderness Association, Inc. v. United States Forest Service, 314 F.3d 1146, 1150 (9th Cir. 2003) (Forest Service's routine maintenance of hiking trails "does not fit into any of the statutorily defined

categories for agency action" under the APA) (citing <u>National Wildlife Federation</u>, 497 U.S. at 899), <u>vacated on other grounds</u>, 542 U.S. 917 (2004).

Moreover, the Second Amended Complaint does not plausibly allege that any challenged conduct involved "final" agency action – *i.e.*, consummation of a formal administrative decisionmaking process which determined specific rights or obligations or resulted in certain legal consequences. At most plaintiff appears to be challenging certain acts taken in connection with day-to-day maintenance operations at FCI Lompoc – which do not constitute final agency action for APA purposes. <u>Cf., e.g.</u>, <u>Wild Fish Conservancy</u>, 730 F.3d at 801 (individual agency actions involving "day-to-day operations" that merely implement operational plans did not "mark the consummation of the agency's decisionmaking process"); <u>Montana Wilderness Association, Inc.</u>, 314 F.3d at 1150 (Forest Service's "[routine] trail maintenance and improvement work" not "final" agency action) (citations omitted), <u>vacated on other grounds</u>, 542 U.S. 917 (2004); <u>see also</u> <u>National Wildlife Federation</u>, 497 U.S. at 899 (APA does not permit "general judicial review of [a federal agency's] day-to-day operations.").

To the extent plaintiff suggests that the BOP's denial of plaintiff's inmate grievances and administrative appeals regarding the MBTA claim constituted "final agency action" for APA purposes (Opp. at 3), plaintiff is not entitled to the injunctive relief sought. Here, the agency action plaintiff challenges in the Second Amended Complaint is the alleged destruction of swallows and swallow nests at FCI Lompoc in violation of the MBTA, <u>not</u> any mishandling of plaintiff's inmate grievance or appeals in connection with exhaustion of available administrative remedies for such claim.

Finally, the Second Amended Complaint does not plausibly allege that plaintiff *personally* suffered injury to a type of interest protected by the MBTA. Plaintiff does allege injury to his "aesthetic, conservational, and recreational" interests – which arguably falls within the zone of interests protected by the

MBTA. Cf., e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 562-63 (1992) ("Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing."); National Wildlife Federation, 497 U.S. at 886 ("recreational use and aesthetic enjoyment" among interests Federal Land Policy and Management Act of 1976 (FLPMA) and the National Environmental Policy Act of 1969 (NEPA) "specifically designed to protect"); City of Sausalito, 386 F.3d at 1204 (noting plaintiff's desire to preserve "presence of migratory birds" was interest protected by MBTA as component of city's interest in "ecological health and aesthetic appeal"). To demonstrate that particular agency action adversely affected such environmental interests, however, a plaintiff must plausibly allege that he or she personally used the natural area allegedly affected, and that the challenged conduct would diminish the value of the specific person's "aesthetic, conservational, and recreational" interests in that area. See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 183 (2000) ("We have held that environmental plaintiffs adequately allege injury in fact [for APA purposes] when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity.") (citation omitted); cf., e.g., Sierra Club, 405 U.S. at 736 ("Nowhere in the pleadings or affidavits did [plaintiff environmental organization] state that its members use[d] [affected area] for any purpose . . . that would be significantly affected by the [challenged] actions. . . .").

Here, plaintiff points to no specific factual allegations in any of his submissions which suggest that plaintiff ever had access to areas at FCI Lompoc where the swallows were nesting, much less that plaintiff had personally used/enjoyed such areas in any specific manner or with any frequency at all such that the destruction of protected swallows would materially diminish the value of plaintiff's "aesthetic, conservational, and recreational" interests therein. Plaintiff's vague and conclusory allegation in one of his affidavits that he "[had] witnessed

17

the destruction of completed swallow nesting colonies at the hands of BOP staff"
(Kandi Aff. #2 at 1), without more, does not plausibly suggest that plaintiff's
aesthetic or recreational use and enjoyment of any area of the FCI Lompoc facility
would be significantly affected by the alleged destruction of protected swallows.
Likewise, conclusory allegations that the BOP's actions "had a negative effect on
the Plaintiff's 'aesthetic, conservational, and recreational' religious beliefs and
constituted a 'concrete interest' which sufficiently 'adversely affected or
aggrieved' the Plaintiff" (SAC at 9, ¶ 5), that "[p]laintiff's personal and religious
beliefs constitute an 'aesthetic, conservational, and recreational' interest [which]
the B.O.P.'s actions violated . . . and 'adversely affected or aggrieved' the
Plaintiff[]" (SAC at 12, ¶ 13), or that "flagrent [sic] destruction of the swallows" by
FCI Lompoc staff "[were] a violation of [plaintiff's] aesthetic, conservational, and
recreational values . . . in violation of the MBTA" (Kandi Aff. #1 at 3) do not show
that plaintiff personally suffered any direct injury to such interests.

        To the extent plaintiff suggests that he suffered sufficient injury in fact
simply because the BOP refused to alter its behavior to suit plaintiff's personal
religious beliefs (SAC at 9, ¶ 5; SAC at 12, ¶¶ 13, 15; SAC at 18-19; Kandi Aff. #2
at 3-4), the Second Amended Complaint fails to allege a plausible basis for
granting relief under the APA. See, e.g., Sierra Club, 405 U.S. at 740 (declining to
construe APA as authorizing judicial review of agency action "at the behest of . . .
individuals who seek to do no more than vindicate their own value preferences
through the judicial process"); cf., e.g., Caldwell v. Caldwell, 545 F.3d 1126, 1131
(9th Cir. 2008) (alleged "psychological consequence [] produced by observation of
conduct with which one disagrees" insufficient injury to confer Article III
standing) (citing Valley Forge Christian College v. Americans United for
Separation of Church and State, Inc., 454 U.S. 464, 486 (1982)) (internal quotation
marks omitted), cert. denied, 556 U.S. 1127 (2009); Navajo Nation, 535 F.3d at
1073 ("The Free Exercise Clause simply cannot be understood to require the

Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens.") (citing <u>Bowen v. Roy</u>, 476 U.S. 693, 699-700 (1986)).

Accordingly, the Second Amended Complaint fails to state a viable APA claim predicated on violation of the MBTA.

## B.   The Second Amended Complaint Fails to State a Cognizable Bivens Claim

The Second Amended Complaint fails to state a viable <u>Bivens</u> claim predicated upon First Amendment retaliation claim against defendant Webster (the only defendant who plaintiff appears to sue under such a theory) or any other individual or defendant.

### 1.   Pertinent Law

"To state a claim for damages under <u>Bivens</u>, a plaintiff must allege that a federal officer deprived [the plaintiff] of his constitutional rights." <u>Serra v. Lappin</u>, 600 F.3d 1191, 1200 (9th Cir. 2010) (citation omitted); <u>see also</u> <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1854 (2017) (noting <u>Bivens</u> provides implied action for money damages against individual federal officials for certain constitutional violations similar to 42 U.S.C. § 1983) (citations omitted).[5]  There is no vicarious liability in <u>Bivens</u> lawsuits. <u>Iqbal</u>, 556 U.S. at 676 (citing, <i>inter alia</i>, <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 691 (1978)).  Hence, a government official may not be held liable under <u>Bivens</u> unless the particular official's own actions caused the alleged constitutional deprivation. <u>OSU Student Alliance v. Ray</u>, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing <u>id.</u>), <u>cert. denied</u>, 571

---

[5]Since <u>Bivens</u> actions and actions under 42 U.S.C. § 1983 are significantly similar, cases decided under Section 1983 are generally applied by analogy when addressing an issue in a <u>Bivens</u> action for which there is no case on point. <u>See generally</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1206 (9th Cir. 2011) ("Although 'more limited in some respects,' a <u>Bivens</u> action is the federal analog to an action against state or local officials under [Section] 1983.") (quoting <u>Hartman v. Moore</u>, 547 U.S. 250, 254 n.2 (2006)), <u>cert. denied</u>, 566 U.S. 982 (2012).

U.S. 819 (2013). Allegations regarding <u>Bivens</u> causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).

"Prisoners have a First Amendment right to file grievances against prison officials . . . ." <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (citation omitted). Retaliation against a prisoner for exercising this right is an independent constitutional violation. <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009) (citations omitted). To state a First Amendment retaliation claim, an inmate must allege that (1) he or she engaged in conduct that is protected under the First Amendment; (2) a prison official took "adverse action" against the inmate; (3) the inmate's protected conduct was the "substantial or motivating factor" underlying the official's actions; (4) the official's retaliatory action "would chill or silence a person of ordinary firmness from future First Amendment activities"; and (5) such action "did not advance legitimate goals of the correctional institution" because it was either "arbitrary and capricious" or "unnecessary to the maintenance of order in the institution." <u>Watison</u>, 668 F.3d at 1114-15 (citations and internal quotation marks omitted); <u>Brodheim</u>, 584 F.3d at 1271 (citations and quotation marks omitted).

## 2. Analysis

Preliminarily, the Supreme Court's recent decision in <u>Ziglar v. Abbasi</u> suggests that a damages claim for First Amendment retaliation based on the allegations in the instant case may not be cognizable under <u>Bivens</u>. <u>See, e.g.</u>, <u>Jones v. Hernandez</u>, 2017 WL 5194636, *12 (S.D. Cal. Nov. 9, 2017) (declining to "extend the <u>Bivens</u> remedy to a First Amendment retaliation claim in [certain] circumstances") (citing, in part, <u>Ziglar</u>, 137 S. Ct. at 1854-60).

In any event, as plaintiff was already informed with respect to materially similar facts alleged in the First Amended Complaint, the non-conclusory

allegations in the Second Amended Complaint are not sufficient to state a viable First Amendment retaliation claim. In short, even assuming the First Amendment protected plaintiff's pursuit of the November Grievance and Plaintiff's Lawsuits, the Second Amended Complaint does not plausibly allege that any such protected conduct was the substantial or motivating factor underlying any adverse action by defendant Webster.

To satisfy the causation element of a First Amendment retaliation claim, an inmate/plaintiff must demonstrate that there was a specific causal link between the defendant's alleged retaliatory conduct and the inmate's exercise of a constitutional right. See generally Hartman v. Moore, 547 U.S. 250, 259 (2006) (citations omitted); Pratt v. Rowland, 65 F.3d 802, 807-08 (9th Cir. 1995). A plaintiff may do so either with direct evidence of a defendant's retaliatory motive, or with circumstantial evidence of the defendant's knowledge of the protected conduct at issue *plus* some other evidence probative of retaliatory intent, such as "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual." McCollum v. California Department of Corrections and Rehabilitation, 647 F.3d 870, 882 (9th Cir. 2011) (citation and quotation marks omitted; alterations in original); see generally Watison, 668 F.3d at 1114 (direct evidence of retaliatory intent "rarely" available).

Here, plaintiff does not contend that there is any direct evidence of retaliatory motive, but the non-conclusory allegations in the Second Amended Complaint do support an inference that defendant Webster had knowledge of the November Grievance (which allegedly complained about such defendant personally). Beyond that, however, plaintiff's conclusory allegations that defendant Webster was "aware" that plaintiff had filed the instant lawsuit and "that plaintiff [had been] assisting other inmates with their legal needs" (SAC at 13,

¶ 23), and that plaintiff had several "active lawsuits against [FCI Lompoc] and members of its staff" (Kandi Aff. #5 at 2-3, ¶¶ 3, 7), without more, do not plausibly suggest that defendant Webster had knowledge of any other protected conduct. Hence, to satisfy the causation element plaintiff must identify circumstantial evidence which plausibly reflects other facts probative of retaliatory motive. As discussed below, the Second Amended Complaint does not do so.

First, plaintiff does not allege that defendant Webster ever expressed opposition to any of plaintiff's protected conduct.

Second, the Second Amended Complaint does not reflect any temporal proximity between plaintiff's protected conduct and defendant Webster's actions that would plausibly support an inference of retaliatory motive. For instance, absent sheer speculation, the tenuous temporal connection between plaintiff's November Grievance filed in 2016, on the one hand, and defendant Webster's disciplinary charges in the Incident Report brought against plaintiff almost nine months later, does not plausibly suggest that the former event was the "substantial or motivating factor" of the latter.

Third, the Second Amended Complaint does not plausibly suggest that defendant Webster proffered any false or pretextual reasons for the Incident Report which might plausibly raise an inference of retaliatory motive. Even assuming, as plaintiff suggests, that there were multiple errors in the Incident Report,[6] plaintiff

---

[6]Very liberally construing the Second Amended Complaint, and assuming plaintiff's non-conclusory allegations to be true, plaintiff alleges that the Incident Report was deficient, in part, because (1) the Incident Report form erroneously listed the incident date as August 28, 2017 – the date plaintiff was issued the "disciplinary shot" – instead of August 24, 2017, when defendant Webster first confiscated plaintiff's book (Kandi Aff. #5 at 3, ¶¶ 9-10, 14-15; Kandi Aff. #5 at 4, ¶ 18), and did not indicate whether or when a copy of it had been delivered to plaintiff (Kandi Aff. #5 at 4, ¶ 19; Kandi Aff. #5, Ex. A at 4); (2) defendant Webster did not deliver a copy of the Incident Report to plaintiff "within 24 hours" as BOP rules required (SAC at 13, ¶ 20; Kandi Aff. #5 at 5, ¶ 23 (quoting BOP Program Statement 5270.09)); and (3) there
(continued...)

has not shown that such deficiencies plausibly suggest that there was any causal link between plaintiff's November Grievance and defendant Webster's Incident Report, much less one probative of retaliatory motive. For one example, plaintiff suggests that the Incident Report falsely listed the "Date of Incident" as August 28, 2017 (*i.e.*, the date defendant Webster purportedly "became aware of [the] incident" after he "found a hand written paper" while "reviewing a book . . . [he] had previously found in [plaintiff's] possession") (Kandi Aff. #5, Ex. A at 4), instead of August 24, 2017 (*i.e.*, the date when defendant Webster first confiscated plaintiff's book). Even if true, such date discrepancy by itself does not *show* (for purposes of Rule 8) that defendant Webster intentionally "alter[ed]" or "falsified" dates in the Incident Report in order to retaliate against plaintiff *because of* protected conduct, rather than that the defendant simply made a clerical error.

Moreover, no matter how emphatically or how frequently repeated, plaintiff's conclusory assertions that defendant Webster falsified the Incident Report "by altering the dates of the incident and the date the report was issued" (SAC at 9, ¶ 7; SAC at 13, ¶ 20), and "falsif[ying] the incident details" (SAC at 13, ¶ 21), in order to "validate [the defendant's] lies[]" (SAC at 9, ¶ 7; SAC at 13, ¶ 20), and "increase the severity of the possible consequences to the Plaintiff[]" (SAC at 13, ¶ 21), or "in an attempt to have the Plaintiff placed into Disciplinary Segregation to prevent Plaintiff's further prosecution of this suit and in retaliation for plaintiff's use of the Administrative Remedy grievance process[]" (SAC at 3, ¶ 4), and/or "because the Plaintiff had previously filed staff grievances against [defendant] Webster and because Plaintiff had filed suit against the institution[]" (SAC at 9, ¶¶ 7-8), are insufficient to plausibly demonstrate retaliatory motive.

---

[6](...continued)
was insufficient evidence to support the disciplinary violations with which defendant Webster had charged plaintiff (Kandi Aff. #1 at 2; Kandi Aff. #5 at 5-6, ¶¶ 25-32; Kandi Aff. #5, Ex. A at 7).

Likewise, plaintiff's conclusory allegation that defendant Webster only "selected" plaintiff's book to be confiscated despite the availability at FCI Lompoc of many other books with "alternate forms of writing" like plaintiff's (Kandi Aff. #5 at 6-7, ¶¶ 33-34), without more, is at best speculative, and thus insufficient to plausibly allege retaliatory motive.

Consequently, plaintiff again fails to state a viable First Amendment Retaliation claim under <u>Bivens</u>.[7]

## C. The Second Amended Complaint Largely Fails to Comply with Rule 8

Here, much like its predecessor, the rambling and prolix allegations in the Second Amended Complaint do little to frame plaintiff's claims with the simplicity, conciseness, and clarity required by Rule 8. For example, much of the Second Amended Complaint is consumed by conclusory legal argument. (<u>See, e.g.</u>, SAC at 1-2, 4-5, 6-8; SAC at 10-17, ¶¶ 2-4, 6-12, 14-15, 17, 25, 29, 31-32, 34-36). In addition, the Second Amended Complaint is often repetitious, argumentative,

---

[7]To the extent plaintiff's <u>Bivens</u> claim is predicated upon defendant Webster's asserted violation of state law, <i>i.e.</i>, the Bane Act, it likewise fails to state a claim because a <u>Bivens</u> action may be predicated only upon a deprivation of a federal constitutional right. <u>See Serra</u>, 600 F.3d at 1200. To the extent the Second Amended Complaint is construed to allege a standalone/ separate violation of the Bane Act, the Court exercises its discretion to decline to exercise supplemental jurisdiction over such state claim in light of the dismissal of the federal claims over which the Court has original subject matter jurisdiction. <u>See</u> 28 U.S.C. § 1367(c)(3) (district court may decline supplemental jurisdiction over claim where "court has dismissed all claims over which it has original jurisdiction"); <u>Carlsbad Technology, Inc. v. HIF Bio, Inc.</u>, 556 U.S. 635, 639 (2009) (recognizing district court's discretion to decide whether to exercise supplemental jurisdiction over state-law claims after district court dismissed "every claim over which it had original jurisdiction") (citations omitted); <u>see, e.g.</u>, <u>Acri v. Varian Associates, Inc.</u>, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (citation and quotation marks omitted); <u>see also</u> <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 940 (9th Cir. 2012) (en banc) (district court must affirmatively indicate that it has exercised its discretion to decide whether to keep state claims in federal court after all federal claims have been dismissed).

cryptic, and at times unintelligible and/or fanciful (see SAC at 8-9, ¶ 3; SAC at 12-14, ¶¶ 16, 20, 24, 28; SAC at 16, ¶ 37; SAC at 18-20), asserts mere recitations of the elements of a claim (SAC at 9, ¶¶ 4-5, 7-9; SAC at 10-15, ¶¶ 2, 5, 11, 13, 15-16, 18-19, 25, 30, 33), and/or makes conclusory factual allegations regarding multiple incidents involving various named and unnamed defendants and/or other individuals (SAC at 8-9, ¶¶ 2-3, 10; SAC at 10, 13-14, ¶¶ 1, 20-21, 23, 26-28; SAC at 17, ¶ 41). As noted above, and as plaintiff was previously informed, such general and conclusory allegations are insufficient to state any plausible claim for relief. See generally Iqbal, 556 U.S. at 680-84 (conclusory allegations in complaint which amount to nothing more than a "formulaic recitation of the elements" are insufficient under pleading standard in Fed. R. Civ. P. 8) (citations omitted); Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992) (Vague and conclusory allegations of official participation in civil rights violations are not sufficient to state a claim under Section 1983) (citing Ivey v. Board of Regents of University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)).

The Second Amended Complaint also never clearly connects any particular event or incident to any specific legal claim against any particular defendant, and fails to mention the *specific* date, time, duration, or location of any particular incident which allegedly caused a deprivation of plaintiff's rights under federal law. For one example, multiple allegations appear simply to assert that one or more of the defendants and/or other unidentified individuals acted collectively to injure plaintiff on unspecified occasions. (See, e.g., SAC at 10-11, ¶¶ 1, 11 [BOP "staff" destroyed swallows without permit]; SAC at 12, ¶ 16 ["defendant's [sic] chose to flaut [sic] the law"]). Conclusory allegations that an indistinguishable group of defendants essentially engaged in identical misconduct, however, are insufficient to show that plaintiff is entitled to relief from any *individual* defendant. See, e.g., Gauvin, 682 F. Supp. at 1071 (dismissing civil rights cause of action, in part, because amended complaint "lumped [all defendants] together in a single,

broad allegation"); Chappell, 2009 WL 1211372, at *3 ("Generic identifiers such as 'Defendants,' 'the Defendants,' and 'others' (without surname specificity) are insufficient to link a specific defendant to offending actions and will not suffice to place any Defendant on notice of Plaintiff's claims so as to prepare a defense.") (citation omitted).

As plaintiff was previously cautioned, the Second Amended Complaint may be dismissed based on the foregoing alone. See Knapp v. Hogan, 738 F.3d 1106, 1109 & n.1 (9th Cir. 2013) (violations of Rule 8's "short and plain statement" requirement "warrant dismissal") (citations omitted), cert. denied, 135 S. Ct. 57 (2014); Cafasso, 637 F.3d at 1059 ("Rule 8(a) has been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling.") (citation and internal quotation marks omitted); McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996) (A complaint is subject to dismissal if "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery."); Davis v. Ruby Foods, Inc., 269 F.3d 818, 820 (7th Cir. 2001) ("The dismissal of a complaint on the ground that it is unintelligible is unexceptionable.").

In addition, plaintiff fails to state a plausible claim based on the contents of any of the "Sworn Affidavits" the Second Amended Complaint cryptically purports to incorporate by reference. (See SAC at 4; SAC at 8-9, ¶ 3; SAC at 10, ¶ 5; SAC at 17, ¶ 38). It is not the Court's responsibility to sift through the voluminous affidavits and exhibits attached to the Second Amended Complaint in an attempt to unearth specific facts that might be pieced together to support some viable claim for relief. See Stewart v. Ryan, 2010 WL 1729117, *2 (D. Ariz. Apr. 27, 2010) ("It is not the responsibility of the Court to review a rambling narrative in an attempt to determine the number and nature of a plaintiff's claims."); see also Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1066 (9th Cir. 2009) ("[j]udges are not like pigs,

hunting for truffles buried in briefs") (citation omitted); <u>Garst v. Lockheed-Martin Corp.</u>, 328 F.3d 374, 378 (7th Cir.) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.") (cited with approval in <u>Knapp</u>, 738 F.3d at 1111), <u>cert. denied</u>, 540 U.S. 968 (2003); <u>cf., e.g.</u>, <u>Independent Towers of Washington v. Washington</u>, 350 F.3d 925, 929 (9th Cir. 2003) (declining to "sort though the noodles" of "spaghetti approach" brief which "heaved the entire contents of a pot against the wall in hopes that something would stick" and left court to piece together the party's argument).

Even so, as discussed above, despite again expending a significant amount of time and effort attempting to make sense out of plaintiff's voluminous Second Amended Complaint and its attachments, this Court has not found – and plaintiff has not persuasively pointed out – any comprehensible information therein which might support liability under either of plaintiff's claims. <u>Cf.</u> <u>Chapman v. Pier 1 Imports (U.S.) Inc.</u>, 631 F.3d 939, 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights complaint may not supply essential elements of [a] claim that were not initially pled.") (quoting <u>Pena</u>, 976 F.2d at 471) (quotation marks omitted; ellipses in original).

### D. THE SECOND AMENDED COMPLAINT IS DISMISSED WITHOUT FURTHER LEAVE TO AMEND

The instant Second Amended Complaint constitutes plaintiff's third unsuccessful attempt to state a viable claim. In light of the foregoing, granting plaintiff leave to file yet another amended complaint would be futile. As discussed above, the MBTA claim still does not plausibly challenge "final agency action" that might be reviewable under the APA or otherwise adequately state a claim for relief and plaintiff's First Amendment retaliation claim does not appear to be cognizable under <u>Bivens</u> at all, let alone to adequately state a claim for relief. Plaintiff's submissions also fail to even remotely suggest that plaintiff could allege

27

other facts that might plausibly establish retaliatory motive by defendant Webster or any other BOP official. See generally Broam v. Bogan, 320 F.3d at 1026 n.2 (court may consider facts outside complaint when determining whether to grant leave to amend) (citation omitted).

Moreover, the Court previously alerted plaintiff to the pleading defects in his first amended complaint, explained to plaintiff at length why his pleading was deficient, and granted plaintiff leave to file a second amended complaint that cured the identified defects. Nonetheless, despite such clear instructions, and drafting three separate versions of his complaint, plaintiff has proven unable or unwilling to state a viable claim against any defendant based on essentially the same factual allegations. Thus, it appears that granting plaintiff a fourth opportunity to draft a complaint would be futile. See Williams v. California, 764 F.3d 1002, 1018-19 (9th Cir. 2014) (affirming dismissal of amended complaint without leave to amend based on futility where, despite having received "two chances[] to articulate clear and lucid theories underlying their claims" the plaintiffs merely repeated allegations previously found deficient); see also Knapp, 738 F.3d at 1110 ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.") (emphasis in original); cf. Serpa v. SBC Telecommunications, Inc., 2004 WL 2002444, *4 (N.D. Cal. Sep. 7, 2004) (where previous attempts to amend have failed to cure a deficiency and it is clear that proposed amendment does not correct defect, court has discretion to deny motion for leave to amend) (citation omitted).

Accordingly, the Second Amended Complaint is dismissed without further leave to amend.

///
///
///

28

## V.  ORDERS

IT IS THEREFORE ORDERED:  (1) the Second Amended Complaint is dismissed without further leave to amend; (2) this action is dismissed with prejudice as to plaintiff's federal claims and without prejudice as to any state claim; (3) the Motion to Dismiss is denied as moot; and (4) Judgment shall be entered accordingly.

IT IS FURTHER ORDERED that Clerk serve copies of this Order and the Judgment herein on plaintiff and counsel for defendants.

IT IS SO ORDERED.

DATED:  11/14/18

HONORABLE FERNANDO M. OLGUIN
UNITED STATES DISTRICT JUDGE